**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

JENNIFER PHOENIX,          )
                            )
        Plaintiff,          )     CIVIL ACTION NO:
                            )
v.                        )
                            )     JURY TRIAL DEMANDED
COBB COUNTY, GEORGIA,    )
                            )
        Defendant.     )

## COMPLAINT

COMES NOW Plaintiff, Jennifer Phoenix, and hereby submits her Complaint against the above named Defendant on the following grounds:

## JURISDICTION

### 1.

The jurisdiction of this Court is invoked pursuant to 29 U.S.C. §§ 1331 and 1337. Plaintiff asserts claims for gender discrimination in violation of 42 U.S.C. § 2000e et seq., as amended ("Title VII"), and for denial of a reasonable accommodation, disability discrimination, and retaliation for Plaintiff's complaints of disability discrimination, pursuant to the Americans with Disabilities Act, as amended 42 U.S.C. § 12101, et seq. ("ADAAA").

2.

Plaintiff timely filed a Charge of Discrimination against Defendant Cobb County, Georgia (hereinafter, "Defendant" or "the County"), with the Equal Employment Opportunity Commission on November 9, 2012, and received a "Notice of Right To Sue" on this Charge from the Department of Justice on May 21, 2014. The Charge served to provide notice of the Charge to Defendant and Defendant was afforded an opportunity to participate in the investigation and conciliation of this Charge. This action is filed within ninety days of Plaintiff's receipt of the "Notice of Right to Sue".

## VENUE

3.

Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 as the Defendant resides in the Northern District of Georgia, Atlanta Division, and the claims arose within the district and division of the Court.

## PARTIES

4.

Plaintiff Jennifer Phoenix ("Plaintiff") is a resident of the State of Georgia and is entitled to bring actions of this type and nature.

5.

Defendant County, is a county organized according to the laws and Constitution of the State of Georgia, is a body corporate with the power to sue and be sued, and is subject to actions of this kind and nature. The County may be served, pursuant to Fed. R. Civ. P. 4, by service on its chief executive officer; or pursuant to O.C.G.A. § 9-11-4(e)(5).

## FACTUAL ALLEGATIONS

6.

Plaintiff is a female, who was initially employed by Defendant as a police officer in July 13, 2009.

7.

In or around July 23, 2011, Plaintiff was injured in the line of duty.  Plaintiff tore her left bicep and rotator cuff and suffered a head concussion.  Plaintiff was in ICU for 72 hours, then moved to a regular recovery room for three days, and then to the physical therapy floor for four days.  Plaintiff continued physical therapy after being discharged on August 4, 2011.

8.

In regard to Plaintiff's arm injury, she was unable to lift her arm or raise her arm above her head, which caused her to not be able to perform her duties as a police

officer on patrol.

9.

Defendant denied Plaintiff sick leave due to non-catastrophic injury. Plaintiff attempted to return to light duty police officer desk work ("PDO"), but was unable to work at that time.

10.

Plaintiff's neurological doctor, Dr. Waldrop, took her out of work due to her memory issues resulting from the concussion. Despite Plaintiff's doctor's orders for Plaintiff not to work, Plaintiff's supervisor, Sergeant JD Lorens made Plaintiff report to work on September 2, 2011 because of a previous "employee violation" from five months before her accident.

11.

Sgt. Lorens ordered Plaintiff to sign an employee leave notice, and submitted the form as unpaid leave. Despite Plaintiff's doctor removing her from work and despite being placed already on unpaid leave, Sgt. Lorens then required Plaintiff to come to work on September 16, 2011 in order to complete an "employee violation" rebuttal.

12.

Due to the fact that Defendant denied Plaintiff's use of sick leave and was not

paying her after her sick leave was exhausted, Plaintiff retained a worker's compensation attorney in or around September or October 2011.

13.

After Plaintiff underwent shoulder surgery on December 9, 2011, she was cleared by her Worker's Compensation doctor, Dr. Weil, to return to work on light duty as a police officer. Defendant granted Plaintiff's reasonable accommodation for light duty work as a police officer. Plaintiff returned to work on December 27, 2011.

14.

On June 3, 2012, at the request of her worker's comp attorney and Dr. Weil's office, Plaintiff went for a functional capacities evaluation.

15.

On June 12, 2012, Plaintiff returned for a check-up with Dr. Weil. He determined it would be best if Plaintiff remained on light duty for "no longer than six weeks." Part of his assessment was based on the functional capacities evaluation.

16.

On June 15, 2012, Dr. Waldrop cleared Plaintiff of all neurological issues pertaining to her concussion.

17.

On June 21, 2012, Plaintiff saw Dr. Weil to inform him that she had been cleared to return to full duty by her neurologist in regards to her head injury. Again, Dr. Weil released Plaintiff to light desk duty. In addition, he told her that it was up to her whether she should be back on patrol longer than the six weeks.

18.

In or around the beginning of July 2012, Defendant informed Plaintiff she was going to now be moved to a civilian position. A civilian position was not a police officer position.

19.

When Plaintiff inquired about why she was being removed from light duty as a police officer to a civilian position, Defendant told her she had been on light duty for six months and must take a civilian position or resign.

20.

Plaintiff had never heard of any such policy that mandated a police officer could not be on light duty for longer than six months. In fact, Plaintiff knew that males who had been in light duty positions due to injury and/or disability were allowed to remain in those positions for well over six months and sometimes on a permanent basis.

21.

When Plaintiff told her worker's comp attorney about Defendant removing her from a police officer light duty position, he showed her a document from Dr. Weil's office dated June 27, 2012. Plaintiff had never seen the document before.

22.

The June 27, 2012 document stated that it was "medically unlikely that (Plaintiff) would ever return to the normal job as a police officer." Plaintiff had not only never seen the document before, but Dr. Weil never told her this during her visit with him on June 21, 2012. In addition, Plaintiff did not have even see Dr. Weil on June 27, 2012.

23.

Plaintiff learned that sometime after her visit with Dr. Weil on June 21, 2012, Defendant contacted Dr. Weil and had him write the June 27, 2012 document changing Plaintiff's ability to return to duty and had Dr. Weil initial the job description for the civilian position.

24.

Additionally, Plaintiff learned that Defendant contacted Plaintiff's worker's comp attorney and told him that she could not remain on light duty because it had been six months. Defendant told her attorney the light duty status would end on July

22, 2012.

25.

Both Plaintiff and her worker's comp attorney complained to Defendant's Human Resources Department about her being removed from light duty. Plaintiff questioned why she was not allowed to remain in a light duty position as a police officer. Plaintiff's attorney, in an email, explained to Defendant that it seemed as if Defendant was trying to push Plaintiff out of a job because of her injuries.

26.

In response, Human Resources told Plaintiff she would have to re-apply for a position as a police officer. Plaintiff was confused by that statement because Plaintiff knew of other similarly situated males who had been injured in the line of duty, who then transferred to positions as non-police officers and were allowed to return later to a police officer position with Defendant without reapplying.

27.

On July 17, 2012, Plaintiff returned to see Dr. Weil to find out why he had changed his position from recommending she remain on light duty for six weeks to recommending she would unlikely return to active patrol. Dr. Weil explained what Defendant sent the civilian job description to him for him to sign. He again told her that whether she went back to active patrol was up to her.

–8–

28.

Dr. Weil never told Plaintiff during the July 17, 2012 visit that she could not return to active patrol duty.

29.

On July 22, 2012, Defendant placed Plaintiff in an administrative civilian position. The civilian position was a reduction in pay and a demotion. As a result of the demotion to the civilian position and June 27, 2012 Document, Plaintiff's POST certification was suspended medically as well.

30.

On November 1, 2012, Dr. Weil cleared Plaintiff to return to full duty, and told her to only return if she felt it necessary.

31.

Soon thereafter, Plaintiff's worker's comp attorney advised one of Defendant's attorneys of the full release from Dr. Weil. The Defendant's attorney said the release was incorrect and supplied "new" documentation from Dr. Weil.

32.

The "new" release was dated November 6, 2012. In the release, it returned Plaintiff to full duty in the civilian position, but not as a police officer. During

Plaintiff's prior visit on November 1, 2012, Dr. Weil never told Plaintiff that he was only releasing her to full duty as a civilian at a desk position.

33.

Furthermore, Plaintiff was already allegedly "released" to return to the civilian position in the document created June 27, 2012. Plaintiff did not understand how she could be released twice for the same position-once on June 27, 2012 and then again on November 6, 2012, which were both dates that Plaintiff did even have a doctor's visit with Dr. Weil.

34.

Once Plaintiff realized Defendant was never going to return Plaintiff back to full duty as a police officer, even if it meant desk duty, she filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) for disability discrimination and gender discrimination on November 9, 2012.

35.

On November 15, 2012, Plaintiff receives a "good" performance review. The only criticisms she received were for absences for sick leave, which directly correlated to the doctor's visits and absences she took due to her injuries obtained in the line of duty.

36.

Additionally, on November 15, 2012, Plaintiff's POST certification was reinstated based on the November 1, 2012 document clearing Plaintiff to return to full duty as a police officer.

37.

In or around May 2013, the worker's comp mediation was scheduled to occur in June 2013. Due to scheduling conflicts, the mediation was then rescheduled for August 2013.

38.

In or around July 11, 2013, Defendant's supervisor informed Plaintiff a criminal investigation was being instituted against her for allegedly impersonating a police officer. A charge that Plaintiff vehemently denied.

39.

The allegations were not valid in that Plaintiff was technically still a police officer as she was POST certified and authorized to resume police officer duties. Plaintiff was just not employed as a police officer with Defendant. If not for Defendant's refusal to return Plaintiff to full duty as a police officer, then she would have been employed with Cobb County as a Police Officer.

40.

On July 25, 2013, Plaintiff was placed on paid administrative leave for ten days.

41.

Before the mediation occurred, the detective that was investigating Plaintiff's alleged criminal charges, constantly asked Plaintiff when the mediation date was going to happen.

42.

On August 5, 2013, the worker's comp mediation took place. As part of settlement and because Plaintiff realized that Defendant was never going to place her back on full duty as a police officer, despite being cleared to return to full duty, she agreed to voluntarily resign. Plaintiff's last day of employment would be August 30, 2013.

43.

Later that night after the mediation, Plaintiff learned the detective investigating her case swore out a warrant for her arrest. Plaintiff turned herself in voluntarily.

44.

On August 8, 2013, Defendant extended Plaintiff's paid administrative leave while the criminal investigation continued. Plaintiff was paid through August 21, 2013.

45.

Ultimately, Plaintiff's criminal case will be *nolle prossed* in October 2014 due to lack of evidence. As part of the plea, Plaintiff agreed to surrender her POST certification for three years and perform community service.

46.

Before Plaintiff was cleared to return to full duty, Defendant denied Plaintiff reasonable accommodation as a police officer on light desk duty, even though there were positions open for her to perform in this capacity.

47.

Defendant's stated reason that she had been on light desk duty for the maximum of six months and was untrue and was actually pre-text for discrimination.

48.

Similarly situated males who were injured in the line of duty received more favorable treatment, and were allowed to perform light desk duty as an accommodation for indefinite periods of time. Whereas females injured in the line

of duty were not allowed to remain on light desk duty as police officers, and were either forced out of employment altogether, or were demoted to non-police officer, civilian positions.

49.

Even though Plaintiff could perform as a police officer and was cleared to return to full duty as a police officer, Defendant denied Plaintiff any position as a police officer and insisted she remain in a civilian position.

50.

In contrast, similarly situated males who were cleared to return to full active duty were allowed to either return to a desk police officer position or were released to patrol duty as a police officer.  Positions that Plaintiff were qualified for and denied.

51.

By denying Plaintiff the reasonable accommodation of light desk duty she had previously been granted by Defendant, Defendant's actions were willful, malicious, and intended to cause Plaintiff physical and emotional harm and did in fact cause her physical pain and emotional pain.

52.

Defendant's actions in instituting a criminal investigation against Plaintiff and

denying her the ability to return to employment as a police officer despite being cleared by her doctor to return, was also retaliation against Plaintiff for filing an EEOC Charge and for her protesting her demotion to a civilian position.

## SUBSTANTIVE ALLEGATIONS

## COUNT ONE: GENDER DISCRIMINATION
## IN VIOLATION OF TITLE VII

### 53.

Defendant treated similarly situated males more favorable than Plaintiff by paying males injured in the line of duty sick leave and not paying Plaintiff, female, sick leave. This was done at least in part because of Plaintiff's gender, and constitutes a violation of 42. U.S.C. § 2000e.

### 54.

Defendant's refusal to honor Plaintiff's reasonable accommodation of permitting her to remain in light desk duty as a police officer, while allowing males the same accommodation was done at least in part on her gender and constitutes a violation of 42 U.S.C. § 2000e.

### 55.

Defendant's refusal to allow Plaintiff to return to full duty as a police officer after she was cleared by her doctor, but allowing males to return to full duty as police

officers, was done at least in part based on her gender and constitutes gender discrimination.

56.

Overall, Defendant treated male employees with similar injuries more favorably than Plaintiff and other females employed by Defendant were treated after requesting medical leave and accommodations. Such actions are a violation of Title VII.

57.

As a result of being denied her reasonable accommodation based on her gender, Plaintiff has suffered emotional distress, and financial losses, including a loss of her pay and benefits of employment.

58.

As Defendant's conduct was willful and deliberate, Plaintiff is entitled to all relief afforded under the statute, including the award of punitive damages against Defendant in an amount to be determined in the enlightened conscience of the jury.

## COUNT TWO: DISABILITY DISCRIMINATION PURSUANT TO THE AMERICANS WITH DISABILITIES ACT, AS AMENDED

59.

Defendant was Plaintiff's employer as defined in Title I of the Americans with

Disabilities Act, as amended.

60.

Plaintiff is an individual with a disability as defined in the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, in that (A) she has a physical impairment that substantially limits one or more major life activities; (B) has a record of such an impairment; and/or (C) was regarded by Defendant as having such an impairment.

61.

Defendant regarded Plaintiff as having a disability or disabilities, as defined in 42 U.S.C. § 12102(2).

62.

Plaintiff was, with or without reasonable accommodation, capable of performing the essential functions of her job. She requested an accommodation, which was to remain on light duty as a police officer, but Defendant denied her request in part due to Plaintiff's disability.

63.

Defendant's rescission of the reasonable accommodation already granted to her, at least in part to her disability constitutes a willful violation of 42 U.S.C. §§ 12101, et seq.

64.

Defendant's actions constituted discrimination on the basis of disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq., thus entitling Plaintiff to all appropriate relief provided under the statute.

65.

Defendant's actions in denying her reasonable accommodation were based on pretextual reasons, and has caused Plaintiff emotional distress and suffering.

66.

Defendant's actions in denying her reasonable accommodations already granted to Plaintiff were based on pretextual reasons has caused Plaintiff financial harm, including the loss of her pay and benefits of employment.

67.

Defendant's actions were willful, wanton, and intentionally directed to harm Plaintiff.

68.

Defendant's actions were reckless and taken in willful disregard of the probable consequences of its actions.

69.

As Defendant's conduct was willful and deliberate, Plaintiff is entitled to all

relief afforded under the statute, including the award of punitive damages against Defendant in an amount to be determined in the enlightened conscience of the jury.

## COUNT THREE: RETALIATION FOR OPPOSING DISABILITY DISCRIMINATION PURSUANT TO THE AMERICANS WITH DISABILITIES ACT

70.

Plaintiff engaged in protected activity by seeking reasonable accommodations and protesting Defendant's refusal to grant her reasonable accommodations for her disability.

71.

Defendant retaliated against Plaintiff, taking actions which would have deterred a reasonable person from making or continuing a complaint of discrimination and which were intended to have such an effect.

72.

During the pendency of the EEOC investigation, and as a result of the pending Charge of Discrimination, Defendant continued to deny Plaintiff a position as a police officer despite being cleared by her doctor, and was retaliation in violation of the ADAAA.

73.

Defendant regarded Plaintiff as having a disability and continued to deny her

reasonable accommodation as a police officer even after she filed a charge with the EEOC on November 9, 2012, and even after she was cleared to return to full duty and was retaliation for engaging in protected activity.

74.

The criminal investigation that was instituted against Plaintiff was also done in retaliation and was done during the pendency of the EEOC investigation and was a result of the then pending Charge of Discrimination.

75.

Defendant's actions were done, at least in part, to retaliate against Plaintiff for opposing Defendant's disability discrimination practiced against her (rescinding of her reasonable accommodation) and constitutes a willful violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq.

76.

Defendant's retaliatory treatment towards her during her employment has caused Plaintiff emotional distress and financial harm, including the loss of her pay and benefits of employment.

77.

As Defendant's conduct was willful and deliberate, Plaintiff is entitled to all relief afforded under the statute, including the award of punitive damages against

Defendant in an amount to be determined by the enlightened conscience of the jury.

## COUNT FOUR: RETALIATION FOR OPPOSING
## GENDER DISCRIMINATION PURSUANT TO TITLE VII

### 78.

During the pendency of the EEOC investigation, and as a result of the pending Charge of Discrimination, Defendant continued to deny Plaintiff a position as a police officer despite being cleared by her doctor, and was retaliation in violation of Title VII.

### 79.

The criminal investigation that was instituted against Plaintiff was also done in retaliation and was done during the pendency of the EEOC investigation and was a result of the then pending Charge of Discrimination.

### 80.

Defendant retaliated against Plaintiff, taking actions which would have deterred a reasonable person from making or continuing a complaint of discrimination and which were intended to have such an effect.

### 81.

Defendant's retaliatory treatment towards Plaintiff was willful and has caused Plaintiff emotional distress and financial harm, including the loss of her pay and

benefits of employment.

82.

As Defendant's conduct was willful and deliberate, Plaintiff is entitled to all relief afforded under the statute, including the award of punitive damages against Defendant in an amount to be determined by the enlightened conscience of the jury.

**WHEREFORE**, Plaintiff prays that this Court:

(a)　Take jurisdiction of this matter;

(b)　Permanently enjoin Defendant from future discriminatory acts relative to discrimination based on gender and/or disability and for opposing disability discrimination;

(c)　Enter a judgment that Defendant's conduct violated Title VII, and the ADAAA;

(d)　 Award Plaintiff front pay;

(e)　Award Plaintiff back pay and lost benefits resulting from Defendant's unlawful discrimination and tortious conduct;

(f)　Award Plaintiff pre-judgment interest;

(g)　Award Plaintiff compensatory damages in an amount to be determined in the enlightened conscience of the jury to compensate Plaintiff for the

mental and emotional distress she has suffered a result of Defendant's

discriminatory and retaliatory conduct;

(h)     Award Plaintiff punitive damages against Defendant in an amount to

be determined in the enlightened conscience of the jury to punish

Defendant for their willful violation of Plaintiff's federal rights and

deter such conduct in the future;

(i)     Award Plaintiff nominal damages;

(j)     Award Plaintiff her costs and expenses of this action, including

reasonable attorney's fees as authorized by 42 U.S.C. §§ 1988 and

2000e, and the ADAAA;

(k)     Grant a trial by jury; and

(l)     Award such other and further relief as the Court deems just and proper.


Respectfully submitted, this 19th day of August, 2014.

/s/ Meredith J. Carter
Matthew C. Billips
Georgia Bar No. 057110
Meredith J. Carter
Georgia Bar No. 325422

BILLIPS & BENJAMIN LLP
One Tower Creek
3101 Towercreek Parkway, Suite 190
Atlanta, Georgia 30339
Telephone:  (770) 859-0753
Facsimile:   (770) 859-0752
billips@bandblawyers.com
carter@bandblawyers.com

Paul J. Sharman
Georgia    Bar    No.    227207
The Sharman Law Firm LLC
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022
Telephone:  (678) 242-5297
Facsimile:   (678) 242-5201
paul@sharman-law.com


Attorneys for Plaintiff